IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

In re:

CHARLES E. WAMSLEY                            Case No. 02-22959
                                                                      Chapter 7

    Debtor.


W. CLARKSON MCDOW, JR.
    U.S. TRUSTEE, REGION 4

    Plaintiff


v.                                                                              A.P. 04-00044

CHARLES E. WAMSLEY, JR.

    Defendant.


## MEMORANDUM OPINION

This Court is reviewing, pursuant to the request of the Plaintiff, the U.S. trustee, and the Debtor/Defendant, Charles E. Wamsley (the "Debtor"), the complete record, including the transcript of a trial conducted by Judge Edward Friend on February 22, 2006, whereafter having heard all the evidence, Judge Friend thought it appropriate to deny discharge to the Debtor. This ruling was appealed to the District Court for failure of the presiding Judge to issue findings of fact and conclusions of law, and was reversed and remanded for new proceedings. Having consented to the suggestion of counsel for both parties with respect to the most economical way to proceed, this Court has reviewed the transcript of the February 22, 2006 trial, the exhibits admitted into evidence at that trial, and then heard oral argument on September 27, 2007.

1

## I. BACKGROUND

The Debtor filed a Chapter 11 petition on September 11, 2002, the petition being one under Chapter 11 of the Code wherein no trustee to protect creditor interests was assigned. The §341 meeting of creditors was conducted, as prescribed, by an officer or employee of the U.S. trustee. That officer examined the Debtor, who performed home building and quality woodcraftsman work, under oath on October 22, 2002. The following questions and answers were provided.

> Q. Your attorney filed on your behalf schedules and statements of financial affairs, along with various other statements and so forth. You signed those statements, or it appears that you signed those. Did you have an opportunity to review those statements?
> A. Yes.
> Q. Is everything on those statements and schedules correct?
> A. Yes.
> Q. Are there any omissions from those statements or schedules?
> A. No.
> Q. Are all of your assets listed on the schedules?
> A. Yes.
> Q. Are all of your liabilities listed on the schedules?
> A. Yes.

(Pl. Tr. Ex. 2; 7-8).

> Q. Okay. In the year prior to the filing of the bankruptcy petition, did you sell, transfer, give away, or in any other way, change the ownership of any asset that you owed such that it is now owned by someone else?
> A. No, sir.
> Q. All of the assets that you owned in September 2001 you still own?
> A. Yes.

(Pl. Tr. Ex. 2; 37).

> Q. Okay. In the year prior to the filing of the petition, I think you have previously testified you did not dispose of any asset in any way, other than the repossessions. Is that still correct, after we have talked about all of your assets?
> A. Yes, sir.
> Q. You haven't transferred anything to any of your companies?
> A. No, sir.

2

> Q. You haven't transferred anything to any of your relatives?
> A. No, sir.

(Pl. Tr. Ex. 2; 66).

During the course of the § 341 meeting of creditors, counsel representing individual creditors also questioned the Debtor.

> Q. Okay. So with the exception, as counsel pointed out several times for you, with the exception of the repossessions and with the exception of that one property that you just acknowledged your misstatement on, as of September 2001, you owned all the same property that you own here now, in September 2002, when you filed the case?
> A. Yes.
> Q. Let's go back then one more year. Let's go back between September 2000 and September 2001. Did you transfer any property during that one year period of time, sir?
> A. I sold an apartment complex in Morgantown.

(Pl. Tr. Ex. 2; 75).

Unfortunately, the well articulated questions of the U.S. trustee's officer and other counsel were not answered truthfully and the questions and answers were of material matters.

This case was converted to one under Chapter 7 of the Code on March 31, 2003. An amended schedule of assets and liabilities (Plaintiff's Trial Exhibit 3) was filed by the Debtor, which listed additional assets not previously scheduled by the Debtor upon filing the Chapter 11 proceeding. On examination by Mitchell Klein (the "Chapter 7 Trustee"), additional questions were raised with respect to the real and personal property of the Debtor because the Chapter 7 Trustee had become aware of two real property transfers that had been made by the Debtor which were not scheduled or acknowledged at the §341 creditors meeting conducted by the U.S. trustee. Questions and answers elicited with respect to matters the Court finds material at the second meeting of creditors are below.

> Q. Let's see. I am going to show you your Bankruptcy Petition, Page 2. And this is the most recently filed, the amended one. And ask you if that is your signature, sir?

3

> A. Yes.
> Q. All right. Did you have a chance to read this and review it before you filed it, before you signed it?
> A. Yes. Yes.
> Q. Does it truthfully and accurately reflect all of your assets and where they are located?
> A. Yes.

(Pl. Tr. Ex. 4; 7).

> Q. Have you sold, transferred, given away anything of value in the last twelve months?
> A. No.

(Pl. Tr. Ex. 4; 8).

> Q. Now, I am looking on your Schedule A, Real Property. That factory building, landwise, that's one point nine two (1.92) acres?
> A. Yes.
> Q. And then there's also another parcel of land attached to it of point one eight (.18) acres of land?
> A. No.
> Q. There's no other - - you don't know of any other land that was conveyed to you by your wife in 2000?
> A. No (unintelligible) in 2000. It's the same piece of property.
> Q. It's the same piece of property?
> A. Yes.
> Q. Let's see. I have a parcel that was conveyed by you on January 1st – excuse me – January 22nd, 2002, from Charles to Susan G. Wamsley, a one-eighth (1/8th) acre tract. Did you convey that to her?
> A. Oh, a one-eighth (1/8th). Yes.
> Q. Okay. And that happened within a year of the filing of the bankruptcy?
> A. I believe it's sometime in 2001. I can't be exact. I don't know the dates.
> Q. And then you own a piece of property in your own name. It's one point nine-o-two (1.902) acres?
> A. Other than the factory building, that's the only thing that's in my name.
> Q. All right. Then you have a piece of property that you conveyed on January 22nd, '02, from yourself to Michael P. Wamsley?
> A. Yes. That was in my father's name, something like that.
> Q. What property is that?
> A. Evidently, my father and mother – they got medical bills and everything. They put it in my name. And I didn't realize it. I just had it put back in my brother's name. They are both in disability.

(Pl. Tr. Ex. 4: 9-11).

4

After having examined the Debtor at this meeting, the Chapter 7 trustee exercised the prudence, as should be done in all such cases, and visited the premises of the Debtor where business had been conducted. As a result of that visit, the Chapter 7 trustee discovered many of additional items that were recovered by an auctioneer for sale. Subsequently, the auctioneer conducted an auction and sold some 468 pieces of equipment and supplies recovered from the Debtor's premises. The auction revenue totaled some $168,000. Later, additional items were discovered by the Chapter 7 trustee that had also not been identified or disclosed by the Debtor, some in storage in a truck or trailer, others at a remote location. These items were also sold, bringing a much less substantial recovery, but did permit additional distribution in the case.

After completing the examination of the Debtor and having determined that two pieces of real property of some value had been conveyed by the Debtor within a year prior of the filing of the Chapter 11 petition, the Chapter 7 trustee commenced to recover the following sums from the Debtor's spouse and the Debtor's brother, to whom the undisclosed conveyances of the two parcels of real estate. From the spouse the Chapter 7 trustee recovered $2,669.85 and from the brother $22,162.50.

## II. DISCUSSION

Bankruptcy Code, Title 11 U.S.C. §727(a), provides that the Court shall grant the Debtor a discharge unless:

> (2) the debtor, with intend to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed—
> (A) property of the debtor, within one year before the date of the filing of the petition; or
> (B) property of the estate, after the date of the filing of the petition;

5

> ...
> (4) the debtor knowingly and fraudulently, in or in connection
>     with the case—
>         (A) made a false oath or account;
>         (B) presented or used a false claim;

Subpart (d) of §727 provides that:

> On request of the trustee, a creditor, or the United States trustee,
> and after notice and hearing, the court shall revoke a discharge
> granted under subsection (a) of this section if—
>     (1) such discharge was obtained through the fraud of the
>         debtor, and the requesting party did not know of such
>         fraud until after the granting of such discharge;
>     (2) the debtor acquired property that is property of the
>         estate, or became entitled to acquire property that
>         would be property of the estate and knowing and
>         fraudulently failed to report the acquisition of or
>         entitlement to such, or to delivery or surrender such
>         property to the trustee; ....

The Debtor filed his Chapter 11 bankruptcy on September 11, 2002, which was ultimately converted to a Chapter 7 bankruptcy on March 31, 2003. In light of discrepancies in the Debtor's schedules, amended schedules, statement of financial affairs, and testimony, the U.S. trustee's office initiated this adversary proceeding on March 16, 2004, seeking to revoke the Chapter 7 discharge that had been granted to the Debtor on September 4, 2003, pursuant to § 727(d)(1).

Revocation of a discharge under § 727(d)(1) requires that the U.S. trustee prove by a preponderance of the evidence that (1) the discharge was obtained through fraud, and (2) the U.S. trustee was not aware of the alleged fraud prior to discharge.[1] *Farouki v. Emirates Bank Int'l Ltd.*, 14 F.3d 244, 249 (4th Cir. 1994) ("the standard of proof in a discharge action is the

---

[1] Section 727(d)(1) requires a movant to establish that the debtor has obtained his discharge by fraud and the movant was not aware of such fraud until after the discharge was granted. On April 18, 2005, the presiding Judge, after reviewing briefs on the issue, entered an order determining that the U.S. Trustee was informed of the alleged fraud before the entry of the discharge but after the time for filing a complaint objecting to discharge, and thus, fell within a judicially-created exception. The April 18, 2005 order has not been disturbed, and, therefore, the court will not address this element on remand.

6

preponderance of evidence"); *Dean v. McDow (In re Dean),* 299 B.R. 133, 139 (E.D. Va. 2003). To satisfy the first requirement, the U.S. trustee must show that (1) the debtor "knowingly and fraudulently made a false oath in or in connection with the bankruptcy proceeding, and (2) the oath concerned a material fact." *Id.* In order to satisfy the requirement that the Debtor have fraudulently made a false oath, the U.S. trustee may either establish fraudulent intent by (1) circumstantial evidence, or (2) inference drawn from a course of conduct or establish a "reckless indifference to the truth" constituting a "functional equivalent of fraud." *Id.* at 140 (quoting *National Post Office Mail Handlers, etc. v. Johnson,* 139 B.R. 163, 166 (E.D. Va. 1992)).

The U.S. trustee has outlined a pattern of fraudulent conduct by the Debtor that began with the initial schedules he filed and continued through the entirety of the bankruptcy proceedings. The U.S. trustee contends that the Debtor filed his initial schedules and statement of financial affairs with numerous material omissions, including vehicles, tools, machinery, real property, tax refunds, and fraudulent transfers of real property. He later amended his schedules to disclose a portion of the omitted assets, but not all of them. Finally, according to the U.S. trustee, the Debtor removed assets from the auction site in order to prevent the auctioneer from selling them.

On his original Schedule A, the Debtor listed two parcels of real estate with a total value of $382,369.55, which included Heron Cove Property (Lot 27) with a value of $82,369.55. When the Debtor filed his amended Schedule A, the Heron Cove Property (Lot 27) was listed with a value of $455,000. Also a Factory Building with a value of $430,000 was added to Schedule A. Originally, the Debtor's Schedule B listed personal property with a total value of $181,702.97; however, his amended Schedule B listed personal property with a total value of $208,705.50. The Debtor's original Schedule B included 6 vehicles with a total value of

$80,630.47. Once amended, Schedule B disclosed 14 vehicles with a total value of $92,285. According to the original Schedule B, the Debtor owned 8 pieces of machinery and equipment, which the Debtor listed as leased property with a value of $100,000. The amended Schedule B, however, revealed 28 pieces of machinery, equipment, and tools, which were not leased and had a total value of $115,748.

When the Debtor signed his initial schedules, he swore under penalty of perjury that they were a complete and accurate representation of his assets, liabilities, and financial transactions. The Debtor reaffirmed this oath during his initial § 341 hearing when he testified that he had reviewed the schedules and statement of financial affairs and determined that they were a complete and accurate representation of his financial circumstances. As evidenced by the amended schedules, the original schedules contained numerous inaccuracies and omissions.

While the Debtor's amended schedules disclosed some additional assets, they still did not disclose the transfers of real property to his wife and brother or the anticipated $65,400 tax refund. Again the Debtor signed and later affirmed that he had read and reviewed the amended schedules and that the information contained in them was complete and accurate. Furthermore, when specifically asked whether he had transferred any assets within the year preceding his bankruptcy filing, the Debtor did not disclose the real property transfers.

During the second § 341 meeting, the Debtor was again asked if he had sold, transferred, or given away anything of value in the year preceding his bankruptcy. Once again, he indicated that he had not. The Debtor only acknowledged the transfers of the real property when he was confronted by the Chapter 7 trustee with the deeds evidencing the transfers.

Among the assets omitted from both the original and amended Schedule B was an anticipated tax refund in the amount of $64,500. The Debtor, however, explained during the

8

initial § 341 meeting that he did not anticipate receiving a refund because he owed a substantial amount to the Internal Revenue Service and he assumed any refund would be offset against his debt. The Debtor, however, did receive two checks totaling $64,500, which were payable jointly to him and his wife. The Debtor did not inform the Chapter 7 trustee that he received the funds, but rather endorsed the checks and gave them to his wife.

Finally, the U.S. trustee contends that the Debtor removed assets from the auction site and stored some of them in a vehicle, which was parked at a friend's home and the rest in two storage rental units. The U.S. trustee asserts that the Debtor did this with the intent of preventing the auctioneer from selling these assets. The Chapter 7 trustee, however, received information about the stored assets, and a second auction was held, at which, the auctioneer sold the remaining assets.

During the Debtor's testimony at the February 22, 2006 trial, he addressed each of the U.S. trustee's assertions. As to the omissions on his schedules and statement of financial affairs, the Debtor testified that his counsel had advised him that he was under severe time constraints and needed "to get a down-and-dirty schedule filed," which could later be amended. Trial Transcript at 195, *McDow v. Wamsley (In re Wamsley)*, No. 04-44 (Bankr. N.D.W. Va. argued September 27, 2007) (No. 55). As to the tools specifically, the Debtor testified that they were not specifically included on the "advice of John [on] how to fill out the voluntary petition. He didn't tell me to break out each individual tool item that we had." *Id.* at 206. As to the real property transferred to his wife, the Debtor testified that he believed that he had transferred the real property to his wife more than a year before his bankruptcy filing, and, therefore, it was unnecessary to list it on the statement of financial affairs. The Debtor, however, also testified that he told his counsel about the property and was told that "it was so small and so immaterial to

9

[not] even worry about it." *Id.* at 197. When questioned about why he had not listed the shop property on his original Schedule A, the Debtor stated, "I can't answer that question for you. I just - - I turned that over to John." *Id.* at 199.

As to the real property the Debtor transferred to his brother, he argues that he was not aware that he owned the property and did not sign the deed transferring it. When asked if he recalled signing the deed that transferred the real property to his brother, the Debtor testified under oath, "I never signed a deed that I can remember, no." *Id.* at 200. The Debtor then explained that he had no knowledge of owning the real property until the Chapter 7 trustee showed him the deed at the second § 341 meeting. *Id.* The Debtor then testified about the receipt of the tax refund, which he did not anticipate receiving. When questioned as to why he did not forfeit the checks to the Chapter 7 trustee, he stated, "That was after we was discharged from the bankruptcy, and I thought it was a nice gift." *Id.*

Finally, in addressing the U.S. trustee's assertion that the Debtor hid assets by removing them from the auction site, the Debtor testified that he had all of the items present for the auctioneer to examine and then explained to the auctioneer which items he had exempted. *Id.* at 212. When asked about the information the Chapter 7 trustee received regarding the tools being stored at a different location, the Debtor responded, "Someone informed Mr. Klein that I was harboring tools at a different location, which I did have two rental storage units a couple hundred yards from my house." *Id.* at 213. When asked if the tools stored in the rental units were present at the first auction, the Debtor testified, "At the time of the first auction there might have been a few, but not – basically, what I was doing the first auction, I was putting furniture in one side of it that I was building for people." *Id.* at 213. The Debtor then went on to explain that, despite

10

his testimony during the § 341 meeting that the companies did not have any assets, the companies owned the items that were kept in the storage rental units. *Id.* at 215.

In evaluating the evidence presented by the U.S. trustee and the Debtor's testimony, the court finds that the Debtor knowingly and fraudulently made false oaths throughout his bankruptcy proceedings. The Debtor contends that he did not have a fraudulent intent in omitting assets from his bankruptcy schedules and statement of financial affairs because he was relying on the advice of his counsel. While the court recognizes that in some circumstances a debtor's reliance on attorney advice may negate the fraudulent intent required, the court finds that the Debtor did not, in good faith, rely on his attorney's advice concerning the omissions on his schedules and statement of financial affairs. *See In re Geller*, 314 B.R. 800, 807 (Bankr. D.N.D. 2004) ("Reliance on attorney advice absolves a debtor of the fraudulent intent required by the false oath discharge exception if such reliance was reasonable and the attorney was fully informed when he gave such advice, especially in a case where neither the debtor nor her attorney manifested any ill intent."). *But see In re Montgomery*, 86 B.R. 948, 958 (Bankr. N.D. Ind. 1988) ("Generally, a debtor who acts in reliance on the advice of his attorney lacks the required intent to deny discharge of his debts; however, such reliance must be reasonable. . . . If however, the bankrupt did not actually and in good faith rely on his attorney's advice, he cannot take advantage thereof.") (internal citations omitted). We find that the Debtor, Charles E. Wamsley, Jr., engaged in a pattern of fraudulent conduct that went well beyond an innocent omission on the advice of counsel.

The Debtor filed his original schedules and statement of financial affairs with numerous omissions and inaccuracies. He then testified at his first § 341 meeting that the information contained in those documents was completely true and accurate. After being confronted by

11

creditors and the U.S. trustee, he filed amended schedules, which disclosed additional assets. The Debtor, however, still did not disclose the transfers of real property. He then testified at his second § 341 meeting that the information in those documents was completely true and accurate. When confronted with the deeds evidencing the transfers of real property, the Debtor admitted to transferring the property. At his trial, however, the Debtor gave contradicting testimony that he did not transfer the property to his brother. In fact, according to his testimony, he had no knowledge that he owned the property and never signed the deed. The court is convinced that his testimony at the second § 341 meeting was truthful after he was confronted with the deeds. While the court does find the Debtor's testimony that he did not anticipate receiving a tax refund when he filed his schedules and amended schedules credible, the court is not convinced that the Debtor thought he was entitled to retain the $65,400 tax refund. Finally, the court does not find the Debtor's testimony that he had presented all of his assets to the auctioneer and then told the auctioneer those assets which were exempt and not to be auctioned was credible. The Debtor's own testimony was contradictory, in that he later explained his withholding of certain items by stating that one of his corporations owned them. Examining this pattern of conduct, the court finds that the Debtor knowingly and fraudulently made false oaths in his bankruptcy proceedings. *Sackett v. Shahid (In re Shahid)*, 334 B.R. 698, 710 (Bankr. N.D. Fla. 2005) ("When there is a pattern of omissions, it is logical to conclude the debtor did in fact make a false oath in connection with the case.").

Finally, the court finds that the false oaths given by the Debtor concerned material facts. The omission of the Debtor's transfers of real property to his wife and brother were of material consequence, as they ultimately resulted in a combined $24,832.35 recovery for the estate. *Hatton v. Spencer (In re Hatton)*, 204 B.R. 477, 485 (E.D. Va. 1997) ("[A] debtor, whether his

estate is large or small, must accurately and diligently divulge the state of his financial affairs. . . . Small estates do not fall under a 'no-harm, no foul' exception to this rule"). Likewise, the omission of the Debtor's assets from his schedules were material to the administration of the bankruptcy, as it is imperative that creditors and the Chapter 7 trustee have a complete and accurate picture of the Debtor's financial circumstances. *Id.* ("[T]here is no *de minimus* exception to the Bankruptcy Code's disclosure requirements").

The U.S. trustee is required to demonstrate by a preponderance of the evidence that the Debtor obtained his discharge through fraud by proving that he knowingly and fraudulently made a false oath, concerning a material fact, in his bankruptcy proceeding. The U.S. trustee has satisfied his burden, and, therefore, the court finds that the Debtor obtained his discharge through fraud. Judge Friend previously found that the U.S. trustee was not aware of the alleged fraud prior to discharge, and that finding was not contested, so further, the Debtor's discharge shall be revoked.

### III. CONCLUSION

The U.S. trustee has successfully satisfied his burden in establishing the requisite elements under 11 U.S.C. § 727(d)(1), and, therefore, the Debtor's discharge shall be revoked.

The court will enter a separate order pursuant to Fed. R. Bankr. P. 9021.

entered: 2/22/08

Ronald G. Pearson,
United States Bankruptcy Judge